Case No. 18-1115, Advanced Biofuels Association Divisioners v. Environmental Protection Agency, EPA Mr. Peterson for the Divisioner, Ms. O'Donnell for the Respondent, and Ms. Morris for the Interpreter Good morning. May it please the Court, I'm Rafe Peterson. I'm here on behalf of the Advanced Biofuels Association. With apologies to the Court, I'm going to occasionally read directly from the text of the statute in this case. It's because I think precision is kind of important related to the claims we have. So in 2005, when Congress enacted the RFS program, it was aware that small refineries might initially face some problems with compliance. And so what it did is it enacted a series of what this Court has called a three-tiered series of exemptions, which were supposed to be a bridge towards compliance. But all along, as noted in the Hermes case, this was to be a bridge towards compliance, not permanent compliance. And that is evidence Did you get to whether we have jurisdiction of this claim or not? Venue? Sure, Your Honor. Jurisdiction? Jurisdiction. We're given jurisdiction to review final actions. Sure. I believe we have finally Final actions have been released. Now, I looked in the petition for review, and you don't state any final action you're asking us to review. There's no citation to a rulemaking or an adjudication. I looked at the beginning of your brief where you afforded the opportunity to again say what ruling is under review. I don't find any rulemaking or adjudication there. I looked at the conclusion of your brief to see what relief you were asking. I didn't see you asking us to vacate any such thing. What final action is it that we have jurisdiction to review? Sure, Your Honor. Thank you. So, under Appalachian Power, actions don't have to be formally published, you notice, in common, as you know, in order to be final. What unpublished action are you asking us to review? So, it is the self-described change of methodology that was adopted by the EPA. When was it adopted? The manner in which When was it adopted? It appears to have been in May 2017. Was it adopted in something you're asking us to review? It was adopted through a series of grants of exemptions to companies from the requirements of this program. Did you ask for a review of any of those? We have asked for a review of the change in methodology, and the change in methodology Did you ask for a review of any of those exemptions that were granted? No, we're not challenging the specific exemptions, Your Honor. Well, you understand that we have only that jurisdiction that the statute gives us. Jurisdiction is not given in gross. We don't have jurisdiction to review just abstract questions of law. We can review final actions. And if there's not a final action that you can tell us we're reviewing, it's hard for me to see where we have jurisdiction. Sure, Your Honor. So, new statutory interpretations disclosed in adjudications can be challenged. Yeah. In adjudication, are you asking us to review? We're asking to review the change of itself. The change speaks for itself, Your Honor. So, there is a definition. Do you have any case where this court or any other has recognized a final action based on the free-floating use of a new statutory interpretation? Well, Your Honor, we don't believe that it's free-floating. Well, as far as your brief, as far as your petition to review, which is what's supposed to come before it, as far as your brief, which is what we're supposed to learn from, as far as your prayer for relief, it appears to be free-floating. You're not asking us to vacate any decision. Your Honor, under the Whitman v. Trucking Association case, what the court says is you look at the agency behavior to determine how it's violated. What was at issue in that case? What was the court reviewing? I don't recall, Your Honor. Interim regulations is the answer. Right. And in this case. And here we have no final or interim regulations, nor do we have informal policy statements or anything akin to those. Right? We have a statement of a legal rule that is embedded in individual agency adjudications. Right. And the normal way that gets reviewed is on a challenge to the adjudication, which you haven't done, and indeed you couldn't do because you wouldn't be in this court if you had framed your challenge that way. And above and beyond the individual adjudications, we just have a legal proposition in the ether. Well, Your Honor, with all respect, I don't think it's in the ether. So there's a definition of disproportionate economic hardship, and that has been used since 2011 for making these determinations consistent with the statute. In the individual adjudications. In the individual adjudications. Which are not challenged. And then the agency announced and has followed this ever since that we are changing our methodology. So the agency has made a clear statement that they're changing their methodology and then has proceeded since then in 85 to 100 cases. None of which you brought to us. Utilizing that. Well, the problem, I think what makes this a little bit different, too, is the manner in which they release this information. So this has all been done under a veil of secrecy because they maintain that all of these decisions are subject to confidential business information. So it's a little harder. We're at a little bit of a disadvantage because we were forced to figure out how this happened through. Fair enough. But these are informal adjudications. There's no APA or other requirement of public notice, right? That's correct. But I don't think that is. You may be in a tough position to figure out what's happening, but you still have to point to an identifiable agency action that you're challenging. And we can point to two, Your Honor. So the first one is that. Well, you haven't pointed to it in your petition to review or in your brief. You did not ask us to review any decision. We're pointing to the decision to change the methodology by which the agency considers petitions for review. And the methodology is laid out very clearly in one paragraph that is repeated throughout all those decisions. And eventually, as of this year, it's simply used to resolve 31 petitions all at once. So it's a change in methodology whereby the agency no longer considers. It considers disproportionate economic hardship differently. And the second major change is that while the statute requires. Before you do that, you said there were two places where this was announced. I thought I heard you say there were. Two specific things that you were challenging. Yes, I am. And those can you just give us the. So, yeah, sure. So the second thing that we're challenging is the notion of extensions of exemptions. So put that aside. I didn't think they were making this argument about that one. But as to the new way of assessing disproportionate hardship, you say there was a paragraph that now shows up in every decision. Yes. So where was that paragraph first? It was first announced and it's dated May 2017. It's a footnote 10. And what the agency says is we've always done way, but we are changing our approach. Can you just point me? Is it in the J.A. that you're quoting from, from your brief? Yes, it is. I apologize. Yes, it is. It is in the Joint Appendix and it's repeated. Throughout its J.A., 260, 276. It's the one that made its way into the Fourth Circuit opinion. So it's 260, 276, and 294. It's always in note 10. But all of these. I'm sorry. Can you just give me your numbers one more time? 260, 276, and 294. Those are good examples. Okay. Sorry. All of these are statements of illegal, of legal assertions in individual adjudications. But it is, it is a, well, what it really is, is it's a revised methodology by which our petition will be considered going forward. So, they have stated that prior to this, and it's their language in their brief, prior to this, they used the Department of Energy study, which they have to under, you know, required by the statute. They would consult with the Department of Energy, and then they can use other economic decisions. But as they stated this, in prior decisions, we considered a small refinery could not show disproportionate economic hardship without showing an effect on viability. We are changing our approach. From that moment forward, in every single petition that they have received. What's the vehicle for announcing that change? It was announced in each one of these decisions, and in the end, most recently, with the 2018 obligation, they simply granted all 31 petitions based on a three-page memorandum. So, it's interesting because, you know, the pushback we've always gotten on this is that, well, these decisions are individual petitions, and they're very highly fact-specific. But I think that that argument kind of crumbles when you take a look at the fact that, as of 2018, they're not even looking at individual. They are, like, dispensing gross and issuing all at once. The APA defines agency action with specific terms, which are rule, order, license, sanction, relief. Which of those is whatever it is you're asking us to review, this policy that you're asking us to review? So, it's the order. So, the APA does not only apply to rulemaking. It's the consummation of the decision-making process. And our belief is that the decision-making process for how they would resolve petitions at some point, and we don't know when or why or how. We've never been provided an administrative record of what led to this decision. But the agency... No, I know, but you need to point to a rule, order, license, sanction, relief, or something equivalent. Well, it's a relief, because they're suddenly providing all of these parties relief from a statute based on what they've called a revised methodology. What is the relief other than the individual order? They're providing relief to a refinery that is seeking and obtains this exemption. Correct. And it's a decision from which... But you're not seeking review of that. Is your position that someone higher up announced a rule that only manifests in each of these individual decisions? Yeah, I mean, that is our theory. The problem is we... There's nothing supporting what led to this change. They themselves... The agency has stated that it's changing... That's also our problem. If we had a final decision that you brought us, including one of these cases, perhaps, we could look back and see whether that's true in the record or not. But since we don't have a final decision before us, we don't know whether it had the proper underpinnings or not, since there's not one that you brought before us. Well, Your Honor, it is the May 4th, 2017, articulation that they have now changed their standard. And it's then... The articulation is not in the APA decision. The APA definition that Judge Katz has written to you. But statutory interpretations, which this is, it's clearly a statutory interpretation, disclosing adjudications can be challenged. Have you filed a petition for review from the August 2019? Did you file a petition for review from the August 2019 where they did the 31? Was August 2019 where they did the 31? No. No, we did not. We weren't aware of that until... We haven't... When did you become aware of that? So, we have an open request here that we've been kind of a little bit battling with EPA over. When did you become aware of it? We became aware of it... There was a dashboard when it came out on the dashboard. And then it was announced in another case in the Singapore case. I'm asking for kind of a date when you became aware of it. So, it was October 19th. So, just a few days ago. Okay. Knew the specifics and had access to that memorandum. And why... So, EPA agrees that's a... At least as to those 31, that's a national type decision that would be brought here. So, why isn't the workable thing for you to do is to file a petition for review from that? Then you'll have something you can point to. They admit it's a national decision. Otherwise, the difficulty is I understand your concerns about secret law. But if your theory is that somebody higher up said use this and you have evidence, you would point to because it shows up in all these different decisions. But what are we... Right? We're not going to do fact-finding for you people. I don't know. I don't know what, as Judge Santella was saying, I don't even know what we grant or vacate or exactly what we're analyzing unless we have more concrete information. Sure, Your Honor. We don't do discovery here. And maybe I can clarify that. So, we did provide that to the court as soon as we had it. As evidence further that this methodology was adopted. It's used in this document. You provided that. You're talking about the August 2019? Yes. Right. But that would now seem like... I don't want to say whether you could or not or whether it would count, but it seems to me... I don't know how your petition for review, which was filed long before that decision came out, would encompass an agency action that happened afterwards, would it? I couldn't tell... Your petition for review didn't... It wasn't clear to me that you're trying to review everything that keeps happening while the petition... The review was based on the fact that we didn't have any... We didn't know what the agency action was because the market for these products, these rings, crashed. And companies were slowly disclosing that they had gotten extensions of exemptions. And we've argued all along that they can't extend something that they didn't have. And that's in our briefs. So, we filed based a little bit on... What relief do you want for your petition? Do you want us to... If everything went your way, would you like us to vacate something? Sure. What are we vacating? So, we want to... A declaration that EPA... What are we vacating? You're vacating their revised methodology for determining disproportionate economic hardship. And the citation we give for that is? You cite to the joint appendix where it's utilized. So, we cite to this individual decision? Yes, and it's used... What would the... If we vacate the test applied... I assume you went everything on the merits. It's just hypothetical. Sure. If we vacate the test applied in an individual case granting an exemption, what is the consequence to that individual company's exemption? Can we vacate the test without vacating their individual exemption? So, I think it would be remanded back to the agency, and then the agency... What are we remanding? What? The national rule or the individual exemption decision? You're remanding back the national rule with instructions. What I'm asking is what happens to that individual exemption decision? So, that I think then EPA would have the discretion, and they would have to make a determination not using that standard of whether or not these companies can still... They would have to redo that individual refiners exemption decision? Yes, I think they would because I think it's... Well, that sounds like the type of thing that's supposed to be bought in a regional circuit. Well, in this case, though, I mean, the reason why we brought it here, it has national applicability. They've never wavered from the statute. Only if EPA certifies it as such. Well, in this case, though, then, it's a little bit of gamesmanship by EPA. So, EPA... We look at the face of the order before us to decide whether it's national or local. So... On the face of all of these, these orders apply to one and only one refinery, and your theory is, well, yes, but the underlying rationale is national in scope. And the statute specifically addresses that scenario by saying, an individual order can go on the national track if the reasoning is national, if and only if EPA certifies it as such, and they haven't done that here. Well, in this case, Your Honor, EPA, when it uses that language, it doesn't say we're changing our approach for this individual facility. It says we're changing our approach. And I think in the 2018, when they issued all of these at once, they have now said it should be in DCC. And you think that statement counts as EPA finding and publishing that such action is based on such a national determination within the meaning of the judicial review provision? Yes, Your Honor, I do. I don't think that they should be rewarded for making such a significant change, something that shifted billions of dollars of revenue around, by not notifying the people who are the other half of the parties who are affected by this rule. I mean, that's unfortunate. I mean, that's part of the reason for this suit, is not condoning it. And it seems like... Do you understand sort of the difficulties? I understand your concerns about lack of transparency and openness that you allege. I'm not making decisions on that. But if we were to assume you were correct that there was a secret rule that then caused all these decisions, it's very hard for us to figure out how to address that, and quite complicated if the thought is that we could be reviewing an individualized exemption decision. For all I know, it could be getting reviewed by another court of appeals regionally as well at the same time. And now you have this decision from August 2019 where they seem quite clear to have announced a rule, at least as to 31 refineries, and a national rule at that. So there is at least a memorandum from a higher-up official announcing a legal position. And I'm not saying whether you would win or lose or be able to challenge that. I'm sure there's plenty of other issues to be litigated. But at least that's something much more concrete. And I just wonder why that isn't your better vehicle. Well... This is concrete from our purposes. It's something for court to look at. Well, interestingly, I mean, in that case, it was brought in the 10th Circuit. So they then said, oh, it should be in the D.C. Circuit. So no matter what, the only consistency is that the EPA always argues you're in the wrong circuit. So in Lyon Oil, they said, oh, this was an individual position. I'm just saying you've got a concrete memorandum from an official. And, again, I'm not getting ahead of whatever issues could be litigated there. But it's the thing you're missing here. What you're pointing to, and I get why you've done it, is a lot of individualized exemption decisions that have an interesting familiarity in their articulations. But I don't think anyone thinks we can review any of those individual decisions here. And so then we would have to say we are taking a footnote out of every one of those decisions that is identical and declaring that. Is that what you want to do? That's the agency rule that we're reviewing? No, we're saying that they've articulated a new definition of disproportionate economic action. In that footnote that's in a lot of decisions. Correct. And so we can lift that up out, and that becomes the rule that we review? Yes, because then that has been... Well, that can be set aside. I mean, we can have declaratory relief that the methodology of no longer considering viability to a refinery is inconsistent with the statute. And they've applied that across the board to every single decision since then. So they've basically amended the statutory terms, the adjudications, and it's a little bit of a shell game in that they're trying to issue all these exemptions and not allow them to be challenged and say that we have to spread out. There's also one of the reasons for... Adjudication as opposed to rulemaking may not be a good way to do things, but it's not an uncommon way to do things. That's true, Your Honor. NLRB for years made no rules with all that adjudication. It may have made us mad at times, but it was not anything improper about it. And we got lots of reviews of NLRB interpretations in adjudication. And, Your Honor, in this court, there was particular adept that it's the cases where the agency articulates something in adjudication that it plans on applying nationally. So this is applied in eight different circuits. All the times that we had it, for example, in NLRB, we got a petition for review of a particular decision that had it in it. We didn't just have the management interest coming in saying, you can't have bargaining orders in interfered election cases. We'd get a particular case that had a bargaining order, and eight times we kept telling them they couldn't do that and finally they quit doing it. But in any event, they brought us cases and we ruled on them. You're not doing that here. Could I explain one main difference here? Yeah. The petitions are issued in secrecy, and we're not aware of their contents or who gets them, even the name of the company that gets them. So it's particularly hard. I mean, what would I do, just file a petition in the Seventh Circuit and say, we believe there might be a small refinery located in your region? Did you try using FOIA to get at least the information that there had been since your filing? Haven't heard. Nothing has ever been responded to under FOIA. You filed a FOIA request. We filed a FOIA request years ago. It hasn't gone anywhere. And they've asserted confidential business information over things that companies publicly disclose. It's such an incredibly aggressive— But, I mean, at least you do now have a concrete decision out there with the August 2019 memo that was revealed in mid-September. Yeah, we believe that that's just another articulation of this policy. I know, but at least it's not all hidden now. At least that one is definitely not hidden. That one is definitely not hidden, Your Honor. Can I ask, if you—so, do you have no way of knowing— is there no list anywhere that says we granted exemptions this month to A, B, C, and D? No. We know nothing, Your Honor. The only people who know it are the parties who are giving them. And then we only figured it out when the prices of these RINs cratered, because they're able to trade on this information ahead of the market because they know they're getting exemptions. If you somehow were able to find out— you had a friend who just got one of these exemptions and told you— is there any mechanism for you, your company, to— one, could you just seek review of an exemption decision when you weren't a party to it, you weren't a party to that adjudication? Or would you even be—if you knew it was ongoing, would you be able to intervene? Or—I'm trying to figure out, mechanically, if there's another way. Well, that's the problem. There probably isn't, because we would— they would roll up the usual suspects. We'd be told we don't have standing. We'd be told that we have no interest in this case. I'm just asking, mechanically, would you be able to find out— Not that I know of. Has anyone attempted to intervene? Any of the detail—I don't know how we would get any of the details. There has been some that have been challenged, but it's only ones that came out publicly, like Sinclair Oil, after Sinclair went back and challenged its— Well, you can intervene even on appeal. But—well, the other thing here that I think is important, Your Honor, is to have this—this is a uniform—to have uniform oversight of the laws. And by going to each individual circuit, we risk having each individual circuit making a different ruling, but it's all the same standard. It's— But, unfortunately, that's not uncommon. I mean, I cited NLRB, but IRS, lots of other agencies, you do have circuit blips on sexual interpretation. That's right, Your Honor. And I think that's why the Clean Air Act— that's why there is that provision of this Clean Air Act for nationally applicable regulations. And we believe this is nationally applicable. They haven't wavered from it. They've issued it— Well, if I'm going to back you up to something else that may be going too far beyond the record, what is the status of your four-year controversy with the agency? Zero answer, Your Honor. It's been how long? Would you take that any further? I mean, the FOIA provides for litigation. FOIA provides—the problem with this, Your Honor, is that these are one-year decisions, and by the time you fight through the thicket of FOIA, the harm has happened. So in the last two years alone, this has been $7 billion. There's procedures for— one, they have a concrete timetable for responding to FOIA, and then you can always seek expedition before FOIA. Yeah, but a FOIA— Okay, so a FOIA would have gotten us to the same place, though. A FOIA would have gotten us this information, and we would have seen, again, that it's nationally applied, and there's two aspects that it's a nationally applied rule in that they've also altered the extension— Even if they had redacted confidential information, you still would have the information on the existence of the decision, which you could be asking us to review. And you have it for some of them, as Presiding Judge points out. You have the existence, and you still have not brought an action to review those particular decisions. To us, the most important thing is that the standard has changed. It's not necessarily— That's the most important thing in Statutory 6. That's more important than anything else. Yes, of course, Your Honor. And we believe that a statutory interpretation that is universally applied across adjudications is reviewable. You have all you need in front of this Court in order to make a decision. In fact, I don't even think you need to look at the individual decisions to render— We have to have a final action. That's a statutory minimum. We have cases out there saying this, but that doesn't equate at all for our jurisdiction on administrative review. And we're going around in circles here, getting back to why you don't have one, but still you don't have one. Yes, Your Honor, we believe that— Is there a FOIA for the exemption decisions, or is it for agency memos sent to whoever it is that makes these exemption decisions that are not formulating policies? The FOIA was related to figuring out what this change in methodology is. What did you ask for? For anything pertaining to the manner in which they are making decisions on requests for extensions of exemptions. Okay, and you got no response? No response, Your Honor. And you didn't go to court? I have not gone to court. There's another FOIA case that has been out there by another group who has been litigating this, and the documents have been slowly trickling out. We're aware of those, and some of those are now just becoming— I think they became public in the last day or so. And I believe, from what I've heard about and seen them, they actually support us, where the agency made a very deliberate decision to change its methodology in order to grant extensions of exemptions to parties who've never had an exemption before, and you can't extend something that doesn't exist. Well, we don't need to get into that argument if we don't have to. All right, I think we'll hear from the other side now. Great, thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Jessica O'Donnell with the Department of Justice. I'm here today on behalf of EPA. With me at counsel's table is Susan Staley from EPA's Office of General Counsel. Also at counsel's table is Ryan Morris, who is representing the Interveners Holly Frontier, and EPA has agreed to give three minutes of its oral argument time to Interveners. I think the Court and petitioners have already put their finger on what is the problem with the ABFA's petition. ABFA does not identify any concrete final agency action as the subject of its challenge. I've never read a brief where the agency begins by saying there is no final agency action, it hasn't happened, and then the second half of the brief is, oh, we announced it, and we explained this new change in policy, and we have a reasonable explanation for it. So we have definitely changed our methodology, and we gave a reasonable explanation for it. It seems to me you can't have one or the other. Is there an agency decision to change methodology? Judge Millett, you're referring to EPA's brief in this case, not petitioner's brief, correct? Right, I'm sorry. Okay, just wanted to make sure. Yes, I'm sorry. Yes, your brief. I'm the only one to say there's no final agency action, and then you tell me there is. Right, well, the arguments in the second half of the brief are in the alternative if the Court does determine there is no final agency action. I don't know how you can acknowledge a change and justify it, but you say on the front half of the brief you didn't make. I don't think the agency is saying that it didn't make a change. I think what the agency is saying is that to the extent there is a change, it is only reflected in those individual decision documents, adjudicating small refinery petitions. Okay, but then what I want to understand is, who makes those individual exemption decisions? Those are made by the Director of the Office of Transportation. Is it a regional official? No, it's a headquarters official, but it's not made by the assistant administrator. It's been delegated down to the head of the particular office. Okay, so when that individual makes this decision, so that same person is making every exemption decision in the country? Yes. Okay, and so your position is when, what I'm trying to figure out is there's this common language that is showing up in all of these decisions and announcing this changed methodology, and so it seems to be my assumption is you're not, he's not making this up as he goes along, that there's rigor and integrity to decision making in the sense that the same law is being applied in all these cases. And so what these decisions reveal is that there is now a new legal rule that's being applied in all of these cases. It's formulated, I guess, by this official or maybe someone higher up who sent it down, but you have an agency official, a central national agency official who has adopted a new changed legal rule that applies in every single case. How is it that that can't be challenged as a national rule? Well, I think we would disagree with Your Honor that it's a rule. It's a statement that the agency, if the agency's position with regard to how it's interpreting the statute, it has legal consequences only with respect to those, the small refinery. It's not a legal rule of decision that gets applied in every single case consistently? It may be precedent, and the EPA is applying it. Is it a legal rule of decision? It is precedent, but it is not a rule generally. I don't know what you mean by it's precedent. It is precedent for that particular. Is it a legal rule, a legal test that they apply to make the decision in an individual exemption case? It is the agency's interpretation of the statute. Is that in your evidence? It applied it, it applied it. Sorry, go ahead. You say it's an interpretation. It's an interpretation that the agency applied to the parties, to the adjudication, in the adjudication. And is that interpretation one that is applied consistently to everybody who applies for an exemption? The documents reflect, the documents in the administrative record in this case, reflect that the agency applied it consistently. That does not make it a national rule. I'm just trying to answer these questions one at a time. So there is a central decision maker who has adopted an interpretation that is applied as the, consistently as a legal rule of decision in all exemption cases. Am I saying that accurately? It is an interpretation. The agency would not concede that it is a rule. Well, agencies do. I said, I didn't say, well, I said, all right, legal. It's the, how is it not the rule of, is it the rule of decision? Is it the legal test that's applied to decide a case? Do you like the word test better? It is the legal interpretation that was applied to decide. Is it the legal standard that they have to meet? Yes, the legal standard that the agency applied in those particular adjudications. And if an agency official, if he issued a public statement that said, here is now the legal standard, here is our changed, we're changing our methodology, here is the new legal standard that I will apply consistently in every exemption case to make this decision. If he did, if he, is it a he or a she? I shouldn't be assuming. It's a he. If he released, sorry. If he released, if that were released publicly, would that be a challengeable agency action? We don't have that situation. I'm not, that's why I said if.  That would be a decision. The parties could fight about whether it is a final action or not, but that is not the situation we have here. Before you move on, sorry. So that would be a final agency action? That this is now the legal test you must meet to get this? We would not concede that that would be a final agency action. I mean, part of the problem with this case is that if we don't have a document in which the agency articulated something that the parties could fight about, whether it's final and what its legal consequences are. Okay, so you don't have the memo in this case. We do have the memo that came out in August that announces new standards for decision for 31 companies. Is that final agency action? That is final agency action. It reflects the agency's decision on multiple petitions for small refinery exemptions. I know the memo carefully says this is how we've decided this group of 31, but I'm assuming that that would represent that they would apply the same legal rule, maybe different outcomes based on the records in each case, but that same legal rule will be applied at least from August 2019 forward to others too? Or is there something unique about those 31? The agency has not articulated in that decision, which is not before the court, or in these decisions, that this is the rule that will apply in every case. I mean, that is the nature of adjudications. I mean, Your Honor referred to the agency announcing a change. This interpretation, the interpretations and the methodologies and the policies that the petitioners want to challenge that are reflected in these individual adjudications have been stated in adjudications. So it's not like you have a rule that the agency articulated. They're stated in adjudications they can't see, and they don't know about it. So you have the difficulty here. Normally in adjudications you have the agency and the party affected, and the party affected is either happy with the agency decision or unhappy. And when they're injured, they know about it and they can seek review. The difficulty here is you have the agency adopting a new methodology, a new standard for decision that is consistently applied across the nation to resolve these disputes in a way that the party to the adjudication has no interest in challenging, but the person who the entities of the rocks is getting gored don't have any notice of the proceeding, don't have any capacity, unless you tell me otherwise, to intervene or participate in that or even to know what the basis for the decision is. So what are they supposed to do procedurally to challenge this new methodology that's hurting them? What are they supposed to do? I think they understand that it is frustrating to petitioners. It is frustrating to the court. I'm not frustrated or not. I'm just asking a question. I don't have a frustration here. I have a question. I don't think it is fair to say that they have no opportunity to challenge these decisions. There is an ongoing case in the Tenth Circuit now that is challenging small refinery decisions that are among the groups that we provided to the court in this case. So being prepped by another industry group representing ethanol interests that are unhappy that EPA granted the exemptions. How did they find out? What did they do? That information was publicly released by the refinery themselves. So the parties in that case filed their challenge based on those SEC guidelines. And is there any question as to the timeliness and viability of their ability to bring that challenge? The EPA did not raise any questions regarding the timeliness of that challenge. Except with regard to, we did raise the, as in this case we are arguing that certain aspects of their challenge go to EPA's 2014 regulation. And we are arguing that that is time barred. But it's a narrow... How could it be time barred if they didn't know about it? They know about EPA's 2014 regulation and what that regulation says. Do they know about it in time? They are participants in this market. I presume that they would have participated in EPA's 2014 rulemaking which was issued on that rulemaking. But talking about the broader case, we have not raised standing defense in that case. I'm not admitting that we would not do so in the appropriate case. I can't speculate as to what we would say. But I don't see why they wouldn't have competitors standing. It's not a unique thing. What I'm saying is in the RFA case that is pending in the Tenth Circuit, we have not raised standing. Nor have we said that their challenges to the three small refinery exemption decisions are untimely. But that is a pure fortuity that the refineries disclosed it. All right, so let's assume we're in a world where the refineries who are benefiting from this don't disclose. So you have a new changed agency methodology that is being applied consistently in all cases which are secret. And the party that's on the receiving end of that has no interest in challenging it. Tell me what, absent a refinery disclosure, how is that supposed to be challenged? Well, petitioners have explained. They have filed a, well, EPA releases some information with regard to these small refinery requests on its website. It has a monthly dashboard that it updates on the third of every month. And it says whether there's been exemptions granted and how many and what are the written volumes. It does not disclose the names of the small refineries because the small refineries have claimed that information as confidential. I'm going to ask a, I understand. So if I'm the lawyer and I'm worried, that dashboard's released, there's no names. I would like, again, an answer to the question, how do they assert their legal challenges to the new methodology? There's nothing to intervene in. They can't identify the cases. And they can't see on what basis you decided the cases. So what should they have done? You don't like what they did here. What should they have done? The petitioners did file a FOIA request with the agency. They have not pursued. Which at least 18 months have gone by without response. But they have not pursued any judicial remedies with regard to that. A FOIA request is not a challenge. That's a way to get information. That is not a challenge to the new methodology applied and adopted by the agency. So I'm asking again. They are saying that they are challenging the agency's failure to release this information to them. They have a mechanism. Part of their case is about getting this information. They have a mechanism to avail themselves of other judicial remedies to obtain that information. And they have not done so. I'm sorry. I don't think bringing a FOIA case is the same thing as bringing an APA challenge to a legal test. The remedies are not the same. But they are saying they can't, that the reason why they are bringing this challenge over which the court lacks jurisdiction is because they do not have the information. And I'm saying, and you are saying, how can they get the information? No. No, that is not my question. But I will make it crystal clear. My question is, how can they challenge the changed methodology that you have said exists and is applied consistently by a single official nationwide in adjudication after adjudication after adjudication? How can they challenge that if they believe, it may not be, but if they believe it's lawless? And I'm saying, in order to do that, they can bring their FOIA case and they can get the information from FOIA, from the agency. That doesn't answer that question. You're saying how we can get the information. How can they bring the action? How can they challenge what they do? They can also bring the action based on public information that the Renewable Fuels Association brought in the other case. They've brought this lawsuit. What lawsuit is it that they bring? They've brought this lawsuit on information that's been released and you say this doesn't work either. So what would they just, if you were advised, I know you're not, but if you were to, good government here, they say you don't like what we did here. How do I bring this challenge? The confidentiality issues are difficult here. I understand that. And I will get to answering your question as best I can. But the small refineries who have submitted this information have claimed it as confidential business information. EPA is required by law, by its own regulations, to treat that information as confidential for as long as it is being claimed confidential and EPA doesn't determine otherwise. EPA has received FOIA requests seeking this information. EPA is working through some of those FOIA requests and has released some of that information and has put it on its website. It is publicly available. Petitioners have the same right as those other parties. Is there enough information there to give them the decision that they could bring a challenge to? I'm not aware of all the pieces of information that EPA has released on its website with regard to these other FOIA requests.  I'm sorry? They have got information. We've got a lot on the record here. And they've cobbled it together and said, here's what we've identified, what you just said. And that is that there's a new change methodology that's been adopted by a person who then applies it nationwide. We think it's lawless. It might not be. It might pass Chevron's Step 2 or 1 or whatever your arguments would be. But they say we think it's lawless. And we are injured and aggrieved. And no one here is questioning their standing. And so how do they bring that APA lawsuit? Or is your position that there can be no APA lawsuit? It is not our position that there can be no APA lawsuit. Okay. They can't intervene. They have said repeatedly they are not challenging the individual orders, which are the final agency actions that they could. But you just told me they couldn't anyhow. They are not challenging those. They haven't said in this case that they are challenging those. That's right. They're saying they can't challenge EPA's, excuse me. No, no, I understand. This is just a really hard question for me. And that's why I'm trying to be very direct about it. And I appreciate your trying to answer. All right. They have said we're not picking on one refiner or another. We have this legal test that we wish to challenge. Now, we can't. I think that's why they say we're not looking to say. It may be that even under the correct view of the legal test and their position, the exemption would still be granted. They don't know any of that. I think that's what they're saying. What they want to say is the problem is that what's driving the train here is something that should not be remotely confidential. And that is a new legal standard has been adopted on a nationwide basis. And it's being implemented consistently on a nationwide basis by a high-level official in the agency in Washington, D.C. Disclose that so we can challenge that. But you don't disclose that when you make exemption decisions. With regard to the new legal standard, I mean, I just want to emphasize that we are not conceding that EPA has promulgated a rule here. What it has done is it has decided individual small refinery requests for exemption on a case-by-case basis. It has applied its interpretation of the statute in those decisions. Has that interpretation changed? I read your brief as acknowledging that it has. It has changed. Okay. That's what they want to challenge. But as Judge Santel recognized, it is not unusual for an agency to articulate its interpretation of the statute as applied to individuals like this, in this situation, in adjudications. Congress did not author or did not require EPA to do it by rulemaking. Of course that's not unusual. What's unusual doesn't happen in the NLRB or IRS other cases, is when it's completely locked up as secret.  That's the question I need you to answer. Because it is not — if it were public, you redacted the names of the companies, but the legal reasoning for the decision was released, the date was released, then they could do what you want them to do and challenge that legal test and say, you can remand court and let them — we may not take away their exemption. You remand for them to apply the correct law if they win on their legal challenge. But we need to challenge that test. They can't do what happens in all the other adjudication cases. That's the question I have for you. What are they supposed to do when there's no root? We would disagree that they don't have any root. I mean, I think we have said we think they can obtain — there's information that the agency is releasing that they can act on. They have remedies under FOIA. Are you saying that there's enough information on that dashboard that they could bring a challenge based on what's there? Not on the — not on just the number of small refinery exemptions that are being issued. Let's just talk about one case for a minute. They could certainly — are you saying there's enough there that they could take what's publicly posted and bring a challenge to that granting of that exemption? Not on what's on the dashboard alone, the numbers. Where is there enough information? Small refinery exemptions that are exempted, but renewable — Just a minute, please. Where is there enough information for them to bring the challenge even to an individual exemption? Certain parties have released the existence of the exemptions that they received. Say it again. I'm sorry. Certain parties who have received the exemptions have not claimed that information as confidential and have released it. The Renewable Fuels Association obtained that information and brought a case in the 10th Circuit. And it's still pending. Challenging three of these decisions, it is pending. The oral argument was last month. That was the fortuity that the refinery chose to release the information. Now, my question to you is if that had not happened, could — how would the challenge — let's assume it stays as secret as EPA is treating it. How does the change in the legal standard being applied by the agency get challenged? EPA is required to keep the decisions, the information, confidential. I'm sure there's lots of litigation about what the information is. Right, and the Supreme Court recently recognized that — I still wouldn't — I really don't want to go astray. All right, so your answer is they should have filed a petition for review from those refiners, whose exemptions they don't really want to fight over, but they should have filed a petition. Did those refiners release the content of the decision? If a part — the Supreme Court recognized in Lujan, if a party wants to challenge the agency's articulation of the standard in an adjudication, it needs to challenge that action. But if they don't know what about — It is frustrating to a party to do it on a case-by-case basis. It's not that — their frustration is not to do it on a case-by-case basis. The frustration is, as you said, unless you have the fortuity of a refiner disclosing — and I'm taking that out of my hypothetical. You see, we can't do it. There's no — the agency is not releasing any public information that would let us take the route they want us to take. And I think what I'm hearing from you is, too bad. The agency — they filed this case. The agency has disclosed the information. And you say, but you can't do this lawsuit. That's right. They do not have a challenge. Okay, so the fact they released the information is not — so the FOIA thing and releasing the information is not the answer, because once they have the information, you still say you can't challenge it. You have to go — I think your position, as I read your brief, is you have to go challenge it through an — you have to take up one or more of all of these individual adjudications. Yes. That's your position. Yes. And yet you said EPA releases nothing that allows anybody to do that. Is that correct as well? That is not correct. Okay. You said the dashboard — EPA is — in response to FOIA, EPA is releasing information about the small refinery exemptions. I can't detail exactly what that is for you because I have not looked at the website. But there is another — the Renewable Fuels Association, another trade association. Is that posted in the eFOIA reading room for the agency? Yes. Okay. And so they're supposed to go there and find — and this is — how old are these exemptions you're releasing? FOIA is the mechanism for parties to get information from the government. So I — suggesting that they use their remedy under FOIA I don't think is that novel or — I'm sorry. This is — what I'm trying — you want them to challenge an exemption. So the exemptions that you say — the grantee of exemptions that you say have been released under FOIA were made what year? What's the date on this? They are challenging decisions from — they were made in 2018 for 2016 and 2017 compliance years. Okay. So that's some time ago. So this would be three years after the fact they're supposed to challenge an exemption. That's the — that's the route that EPA — they're supposed to now three years after the fact. Say tomorrow you release the FOIA information to them. Right. They can — Three years later they're supposed to file a petition for review of that individual grant of an exemption. That's your position. We would not in that case assert that they are time-barred because that decision was not published in the Federal Register. And they're supposed to challenge that. They may challenge that. They may also challenge — But that exemption is over — They admit here that they have not — I'm sorry. That's why I had one thing. That — so they want to challenge an exemption that has long since expired. Is that correct? They're one year at a time exemptions. Am I right? Yes. It hasn't expired. It just — it was for a — the exemption applied to that small refinery for a year. Right. So if you granted — you said these were from, like, grant issued in 2016? They were issued in 2018 for 2016 and 2017 compliance years. Okay. There may have been some that were issued — wait, am I — Is that my time? Are they still live? Yeah. Are they — would it — if I wanted to overturn that exemption, would it be moot because it's expired and they had to apply for a new one? I don't think that we would assert mootness there. You may not assert it. That's a jurisdictional question. The exemption is — Is it moot? The exemption is issued. Once the exemption is issued, it entitles that — it removes the obligation for that small refinery to have to comply for that year. And so once that year's over, it's moot whether they got the exemption or not? But they — Is it moot or not whether they got that exemption once the year's over? I don't know the answer to that question. I'm not going to say. The last point that I would make is that, as Your Honor pointed out, there is an August 2019 decision. The petitioners have notice about it. They supplied it to the court. It's not before the court in this case, but they can file a challenge to that decision. And the time for filing that challenge would be measured from when it was publicly disclosed in court? Because that's an August 2019 decision, but they didn't — It's an August decision, but it was not published in the Federal Register. So the 60-day period has not been triggered yet. Okay. Thank you. May I please support Brian Morris for Hawley Frontier? Just here to emphasize that, in essence, the dual requirements of Section 307 are really what's at issue here. Because there's the venue provision and then there's jurisdiction. And what you can't do is try to avoid one and subvert the other one, which is what we have here. There is no final agency action other than the individual adjudications themselves. And those are regional on their face. But that, as they say, they're not challenging them. So this Court doesn't have venue, and there's no venue here, and there's no final agency action. If I may give you what, to be crystal clear, is, I expect, entirely hypothetical. Okay? If the administrator of EPA issues a memo that says — we know it's hypothetical because there hasn't been 100 percent grants. All requests for small refinery exemptions will be granted full stop. I believe what makes them small is what makes them eligible for an exemption under this statute and articulates a legal rationale. Sends that down to this individual who makes all the exemption decisions and says, I'm your boss. They will all be granted. Here's the new changed legal rationale. And that may be perfectly fine or not. No one's getting to the merits yet. But pushes that down and says, you will grant all exemptions under this new legal standard that I'm directing you to apply. Is that a challengeable agency action? Is that final agency action? Or do you have to wait for the adjudication? If there's a memorandum that does that, I think it does. But not because it's instructing someone within EPA to do something. It's because it now gives a legal effect to the regulated party. They now are entitled to it by virtue of the fact that they're small refiners. That's far different from the situation. I'm just asking hypotheticals right now. I am not suggesting that that is the record. Just so you feel safe, that's what's here. I'm just trying to understand how this process works. So if that's what happened in my hypothetical case, and it's a secret memo, and it doesn't get publicly disclosed, but the way people get on the scent of it is suddenly 100% of exemptions are being granted. The decision's entirely secret and locked up. No one can know what's going on. The memo's secret. The decisions are secret. Other than the bottom line, shows up on dashboard, 100% of exemptions have been granted. In my hypothetical. How do people that are injured by my hypothetical final agency action bring that lawsuit? I don't know that they could. If they have, when, that there has been a change within EPA. They can approach EPA. I'd imagine that there are ways in which they could seek prospective relief of some kind. For obvious reasons. Obvious or not. This is not, they don't know. It's kept secret. All they can see is the number of decisions and how they're coming out. So no EPA lawsuit can be brought. If they don't have wind other than there are grants that are occurring. It's a race of so-called aquater, they say. The proof's in the pudding. Right. It's 100%. It used to be a tiny amount, and now it's a large amount, and 100% are getting granted. That's the best they've got. I'll confess, I don't know of a way in which to do that. Like I said, I think they can approach the agency. Maybe initiate a rulemaking or something along those lines where they want standards or they want to air these types of things if they think there's a change. I think they can do that. Whether they can go back in time and undo certain things, I think that's a slightly different question. No, they only want prospective relief. They'd like to know what, obviously the law changed because there's no, this cannot possibly be a coincidence. It's happening nationwide, consistently, and not only has the outcome changed, but the volume has increased 800%. All right. Something has changed. They don't know what any individual company might be entitled to an exemption or not. They just want to, a new rule's been adopted. They want to challenge it. I understand. And I understand their frustrations with the jurisdictional and venue provisions in 307 and the ways in which to get it. Well, you now acknowledge that there's a final agency action in my hypothetical, not this case. And so you don't have that jurisdictional problem. Right. Again, I'm not aware of a way in which to make that happen. But to be perfectly fair, the change in the hypothetical is there is a fundamental difference between an articulation policy or law and one that actually affects the regulated parties. And I see I'm out of time. Go ahead and finish this. I understand. But if they say, what they say now is things have been, so now we're not in hypothetical world. But they say things have been released that document the articulation of this change legal policy that hurts us, that affects us, that gives us an Article III injury. And we would like to challenge it. We don't know whether we disagree or not with any individualized exemption decision because we don't have the full records in those cases. And there's a lot of confidentiality. All we want to attack is that legal rule. Understood. But what I'm putting out is the difference between your hypothetical and, say, a policy statement as we would conceive of it here, which is the footnote says this is how EPA views it. But there's no actual effect on the regulated parties. Well, they say there is because I assume it's not just put in there for entertaining reading, that that is part of the explanation of the basis for decision. For some. There are 13 of these exemptions, several which are in the joint appendix, where they scored in both of DOE's matrices and would be entitled regardless of that articulation in the footnote 10. So there are decisions in the record where that articulation has no effect. And that's why you need an adjudication to apply it. Am I right that all this information was disclosed after they filed their petition? What's that? All this information was disclosed after they filed their petition? I believe so. It seems troubling. Okay. I'm sorry. I interrupted both of your times too much. I see. I'm over time. So unless there are any further questions. Thank you very much. Thank you. Mr. Peterson, do you have any time left? Two minutes. I'll be quick. I'll just say it's a little bit of a shell game. But at JA 512, your memorandum, Your Honor, is there. It's a clear statement. It says for the purposes of implementing the Clean Air Act section, EPA has determined that DEH can exist on the basis of adverse structure alone. It's applied consistently to everyone. And, you know, tellingly, EPA can point to no example where it wasn't used. This change in methodology has been used throughout. And in terms of the dashboard, that dashboard was created during the pendency of this case. So there wasn't even a dashboard when we filed this. We had zero information. And finally, I'll note that the relief that we have requested is prospective. I mean, I think we've been honest about that all along. Things have passed. As you made, as the point you made, Your Honor, the time has passed. This harm happened on a rolling basis. These things, our cases, and they admit our cases, moot for the prior exemptions. The RINs expired. The damage is done. What we're looking for is some sort of prospective relief in terms of them not being able to use this methodology going forward for future decisions. And it has been applied, and the numbers are there, and it's in our brief. I mean, we show clearly where companies or refineries that wouldn't have gotten an exemption before are now entitled to an exemption, and it's solely due to this revised methodology. It's solely due to this change that I think the court should look at the effect that it has and the way it was articulated is important, but it was articulated consistently. And I think these are a little bit unique circumstances because the confidential business information, they do have an ability to push back against these companies and say not everything is confidential. I don't know what it is about this program that this agency, you would think we were dealing with national secrets here, but the fact is that there are ways for the agency to help itself, and I don't think parties should have to use FOIA in order to bring an APA case on something that no one's denied happened. It's happened. It just seems that they're just trying to push us around to different courts, which has been, unfortunately, consistent with their practices. Just one quick practical question for you. Is there any legal barrier to you that to file a petition for review from the August 2019 decision that's only recently been made public? Could be I'm not piecing all this together. The only legal barrier, I suppose, would be time. Are those ones now moot? Well, they've said it wasn't publicly released, so until... Oh, no, I don't think there's any legal barrier. No, but I believe that memo... So that was just a recent grant, so they wouldn't have the mootness problem either. Right, and I'll say that that memo, as we point out when we brought it to the court, all it is is, again, a repeat articulation of the same standard, and they haven't denied that they changed the methodology. We have a paper to point to now. Yeah, we have a paper. Well, we had a paper all along. It's in every single... You have a policy memo. We have a policy memo. Except from the adjudication decisions. They repeat it in every single adjudication decision. They use the exact same boilerplate language, and they said we've changed the methodology, we've changed the methodology. You just want prospective relief, so the fact that they said it before seems to me not your... As long as you've got them dead to rights now saying it in August 2019. Dead to rights, shall I say, just for purposes of this jurisdictional issue. Sure. They're saying it. I think it certainly helps us, but I don't think our jurisdiction was fatally flawed before, because they've just repeated the same words again and again. They first stuck it in... No, I understand what your point is. I just wanted to make sure there wasn't something that I had missed in the discussion here as to why a petition from you couldn't be filed. Whether you want it or not, it's your decision. I'm just trying to make it that it wouldn't seem to have the mootness. It wouldn't have... I heard her say here that it wouldn't... If one act in a timely manner, if you act within 60 days of public release, that it wouldn't have a timeliness issue. It wouldn't have the final agency action problem. Right. And, Your Honor, I... And since venue is here. Well, I'm sure they'll challenge venue. No, they've told the other circuit it has to be here. Now, if they come here and tell us it has to be there, they're going to have a whole other problem to deal with, I think. Right. But I do believe, Your Honor, that the court can take judicial notice that this is... That that memorandum is just an articulation of what they already did. We can do... We can take all the judicial notice, but you have to have jurisdiction at the time your petition is filed. Right. And we believe we have jurisdiction as articulated in all those decisions consistently. Thank you. All right. The case is submitted.
judges: Millett, Katsas, Sentelle